# Weaver, Appellant *v.* Pennsylvania Railroad Company.

*Negligence—Railroads—Locomotive—Loud blowing of whistle—Frightening of horses—Judgment for defendant n. o. v.*

1. The blowing of a whistle by a locomotive engineer is a lawful act and when negligence in the blowing is alleged the plaintiff must prove that the commission of the act, either at the time, in the place, or in the manner done, became unlawful.

2. In an action against a railroad company to recover for personal injuries resulting from the frightening of horses due to the alleged unnecessarily loud blast of a locomotive whistle, where it appeared that the horses were harnessed to a wagon and were backed up to a freight car standing on a siding; that on the opposite side of the car a locomotive was standing on the main tracks of the railroad attached to a long train of cars; that the engineer blew the whistle for the purpose of signalling those at the rear of the train that it was about to start, and for the further purpose of warning pedestrians at a dangerous grade crossing a short distance ahead, but where there was no evidence that the engineer had seen the horses or that they were skittish or frightened at the time when the whistle was blown, the court properly entered judgment for defendant n. o. v.

Argued Jan. 22, 1917. Appeal, No. 264, Jan. T., 1916, by plaintiff, from judgment of C. P. No. 4, Philadelphia Co., March T., 1914, No. 2928, entered for defendant non obstante veredicto in case of Samuel Weaver v. Pennsylvania Railroad Company. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover damages for personal injuries.

FINLETTER, J., filed the following opinion sur defendant's motion for judgment non obstante veredicto:

At the trial of this cause it was argued that there was a question of fact in the degree of shrillness of the blasts of the whistle; and that the jury had a right to pass upon the question whether the signal had been given with unnecessary loudness. I permitted the case to

proceed to a verdict so that a retrial to fix the amount of damages might be avoided, if a more deliberate consideration of the subject would lead to a change in my opinion that no negligence had been shown. We have since had the benefit of excellent briefs from either side, and have reached the conclusion that binding instructions should have been given for the defendant.

There is really no dispute about the facts of the case. The whole testimony together makes up one story of the occurrence, each party's account merely supplementing that of the other, without raising any contradiction.

The plaintiff sued to recover for personal injuries alleged to be the result of an unnecessary, or unnecessarily loud blast of a locomotive whistle, which frightened the team of horses attached to a wagon in which the plaintiff was working, and caused them to run away. The plaintiff was thrown out and injured.

The circumstances as they appear in detail from the plaintiff's proofs were these: About fifteen minutes before the accident occurred, a wagon loaded with bricks was driven alongside an empty freight car, which was standing upon a siding. The driver put down the reins, and, assisted by the plaintiff, proceeded to throw the bricks from the wagon to two men who stood in the car. On the opposite side of the car a locomotive was standing upon the running tracks of the railroad. This situation continued for fifteen minutes, when two blasts were sounded on the locomotive whistle, at which the horses took fright and ran away.

The defendant's testimony corroborated all of the facts so far related, and added the following: That the engine was attached to a train of forty freight cars. Shortly before the plaintiff drove up, the train had been proceeding, and had been stopped by a red signal from the signal tower, situated a little over a square away, at the grade crossing of the Baltimore and Ohio Railroad. A flagman was immediately, in accordance with standing orders, sent to a position sufficiently far behind the rear

of the train to guard against rear end collisions. The train was about 1,300 or 1,400 feet long, and the flagman went about 300 feet further down the track, so that he was about a quarter of a mile from the engine. After a short time the signal was given from the tower to the train that the way was clear to advance. The engine signalled, recalling the rear flagman. This signal was given in the customary way by four long blasts, followed by one short blast upon the whistle. The flagman returned, and the engineman, being notified, sounded two blasts upon the whistle, and started his train.

The only difference between the parties is in the adjectives which they used in describing the sound of the two blasts; the defendant's witnesses insisting that the sound was not unusual and was no louder than was necessary, while the plaintiff's witnesses described the sound as "thrilling," "enough to deafen you," and the like.

It will be seen from the above recital that the nearest approach to proof of negligence is the description of the sound of the whistle as "very loud." This is the judgment of the plaintiff's witnesses, who were about as close to the engine as any one not upon it could be.

But mere loudness is not proof of negligence.

"As to the allegation that the whistle was blown unusually loud; that of itself does not show negligence; how far must the sound carry to warn those whom it was intended to reach either on the highway or the tracks? That would depend on the state of the atmosphere at the time, and the knowledge of the engineer derived from observation. No mere opinion or conjecture of those having no knowledge on the subject should be permitted to convict him of negligence": Dean, J., in Webb v. Philadelphia & Reading Ry. Co., 202 Pa. 511-514; and in the same case (p. 513):

"The blowing of a whistle by a locomotive engineer is a lawful act......He who alleged negligence must go farther and prove it. He must show that an act in

itself lawful, the commission of it, either at the time, in the place, or in the manner, became unlawful."

In the present case no inference of negligence arises from any of these considerations. The blasts were blown evidently to notify all concerned of the starting of the train, and of its approach to the dangerous grade crossing. The length of the train and the distance from the crossing demanded a loudly sounded warning; while, on the other hand, there was nothing in the surroundings to indicate that a whistle, no matter how loudly sounded, would harm anybody. There was no testimony that the engineer had seen the horses. They drove up on the other side of the "gondola" car, which was between him and them. And even if he had seen them, there was no evidence that showed they were skittish or frightened. On the contrary, if he had seen them, he would also have seen that those in charge of the horses regarded them as so docile and reliable as not even to require to be hitched. Moreover, they had heard only a few minutes before, without being disturbed, four long and one short blasts from the same engine standing on the same spot. This was not a case, therefore, where the whistle was blown without apparent necessity, nor where horses were seen to be frightened, as in Penna. R. R. Co. v. Barnett, 59 Pa. 259.

The engineer had the right to blow the whistle for a proper purpose. And surely the moment of starting a train so long as this, and so near to the crossing of another railroad, was the proper occasion for a warning, be it to the crew of the train itself, or to the tower man or to possible trains on the other railroad.

As was said in Farley v. Harris et al., 186 Pa. 440-442:

"If there was danger either to himself or to another ahead of him or to both, the only warning he could give was by the whistle......An act in itself lawful, or which may have been permitted by the exercise of care, yet which incidentally results in injury to another, does not justify an inference of negligence. To hold otherwise

1917.]　　Opinion of Court below—Opinion of the Court.

would place on every steam railroad the burden of proving, in every case where a horse was startled by a steam whistle, that the use of it at that particular juncture was not negligent, but for a proper purpose, thus in effect raising a presumption of negligence against the defendant for an entirely lawful appliance."

The defendant's motion for judgment n. o. v. is therefore granted.

Verdict for plaintiff for $2,839.40. The court subsequently entered judgment for defendant non obstante veredicto. Plaintiff appealed.

*Error assigned,* among others, was in entering judgment for defendant non obstante veredicto.

*Victor Frey,* with him *Augustus Trask Ashton,* for appellant.

*Sharswood Brinton,* for appellee, was not heard.

PER CURIAM, February 26, 1917:

This judgment is affirmed on the opinion of the learned court below sustaining defendant's motion for judgment non obstante veredicto.

---

## Steinfield, Appellant, v. Epstein.

*Equity—Bankruptcy—Partnership settlement—Fraud.*

A bill in equity by the trustee of bankrupt's estate for a reopening of the settlement of partnership affairs made between the bankrupt and the defendant five years before, and for an accounting, and alleging that at the time of the settlement defendant had fraudulently concealed assets of the partnership from his partner, was properly dismissed where it appeared that the bankrupt had then no creditors, that the parties were dealing at arm's length and that each of them had equal means of knowledge of the assets of the estate.